## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JAMES HARDMAN,             )
                                        )
                   **Plaintiff,**     )
                                         )      **CIVIL ACTION**
**v.**                                    )
                                       )      **No. 02-2291-KHV**
AUTOZONE, INC.,         )
                                       )
                   **Defendant.**   )
_____)

### MEMORANDUM AND ORDER

James Hardman filed suit against his former employer, AutoZone, Inc., for racial harassment, discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq*. This matter comes before the Court on plaintiff's Motion For Judgment As A Matter Of Law, Reinstatement Of Prior Jury Verdict Or Alternatively For A New Trial On Damages (Doc. #154) filed May 31, 2005; Plaintiff's Amended Motion For Attorney's Fees And Costs (Doc. #153) filed May 31, 2005; Defendant's Motion And Incorporated Memorandum To Dismiss, Strike And/Or Quash Plaintiff's Motion For Fees And Costs (Doc. #165) filed June 23, 2005 and Plaintiff's Amended Motion For Attorney's Fees And Costs (Doc. #171) filed July 12, 2005. For reasons stated below, the Court overrules all four motions.

### Factual Background

In its Memorandum And Order (Doc. #40) of September 5, 2003, the Court set forth pertinent factual background on the parties' motions for summary judgment, which is incorporated by reference.

The evidence presented at trial was not materially different than the summary judgment record.[1]

## **Procedural History**

On June 26, 2002, plaintiff filed suit against AutoZone, alleging that (1) AutoZone maintained a racially hostile work environment; (2) because of his race, AutoZone did not promote him to store manager and discriminated in the terms and conditions of his employment, (3) after plaintiff complained of race discrimination, AutoZone retaliated by disciplining him and allowing harassment to continue.

On September 5, 2003, the Court sustained defendant's motion for summary judgment on plaintiff's disparate treatment claim. See Memorandum And Order (Doc. #40). On October 27, 2003, a jury found defendant liable for racial harassment but not retaliation. For harassment, it awarded $1.00 for emotional distress, $1.00 for lost wages and benefits and $87,500.00 in punitive damages.

The Court sustained defendant's motion for new trial and ordered a new trial on plaintiff's racial harassment claim. On May 20, 2005, a second jury found in favor of defendant on that claim.

Plaintiff argues that the verdict for defendant at the second trial should be vacated because (1) the Court's instruction on vicarious liability excluded consideration of the knowledge and actions of Troy Raber who was one of plaintiff's supervisors and the primary perpetrator; (2) the evidence conclusively showed that defendant did not prove its affirmative defense under Faragher v. City of Boca Raton, 524 U.S. 775 (1998); (3) the jury's verdict was against the weight of the evidence; (4) the jury pool did not include any

---

[1] On a motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to the prevailing party. See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1546 (10th Cir.), cert. denied, 519 U.S. 928 (1996).

On a motion for new trial, the Court determines whether the verdict was "clearly, decidedly, or overwhelmingly" against the weight of the evidence. Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1284 (10th Cir.), cert. denied, 528 U.S. 814 (1999).

African-American or Hispanic individuals; and (5) the Court erred in granting a new trial.

## Judgment As A Matter Of Law Standards

Judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure "should be cautiously and sparingly granted." Zuchel v. City & County of Denver, 997 F.2d 730, 734 (10th Cir. 1993). Judgment as a matter of law is appropriate "only if the evidence, viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party." Riggs v. Scrivner, Inc., 927 F.2d 1146, 1149 (10th Cir.), cert. denied, 502 U.S. 867 (1991). Such judgment is proper only when "the evidence so strongly supports an issue that reasonable minds could not differ." Ryder v. City of Topeka, 814 F.2d 1412, 1418 (10th Cir. 1987). In determining whether judgment as a matter of law is proper, the Court may not weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury. See Lucas v. Dover Corp., 857 F.2d 1397, 1400 (10th Cir. 1988). Nevertheless, the Court must find more than a mere scintilla of evidence favoring the nonmovant; the Court must find that "evidence was before the jury upon which it could properly find against the movant." Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1547 (10th Cir. 1988).

## New Trial Standards

The decision to grant a motion for new trial is committed to the trial court's sound discretion. See Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1194 (10th Cir. 1997). "[T]he party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence." White v. Conoco, Inc., 710 F.2d 1442, 1443 (10th Cir. 1983). The Court should ignore errors that did not affect the essential fairness of the trial. McDonough Power

Equip., Inc. v. Greenwood, 464 U.S. 548, 553 (1984) (quotations and citations omitted).  "Where a new

trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it

is clearly, decidedly, or overwhelmingly against the weight of the evidence."  Anaeme, 164 F.3d at 1284

(quotation omitted); see May v. Interstate Moving & Storage Co., 739 F.2d 521, 525 (10th Cir. 1984).

### Jury Instruction Standards

The decision whether to give a particular jury instruction is within the sound discretion of the Court.

The instructions as a whole must provide correct statements of the governing law and provide the jury with

an ample understanding of the issues and applicable legal standards.  Allen v. Minnstar, 97 F.3d 1365,

1368 (10th Cir. 1996).  The question is not "whether the charge was faultless in every particular, but

whether the jury was misled in any way and whether it had understanding of the issues and its duties to

determine these issues."  Mason v. Okla. Tpk. Auth., 115 F.3d 1442, 1454 (10th Cir. 1997) (quotations

and citations omitted); see Brown v. Wal-Mart Stores, Inc., 11 F.3d 1559, 1564 (10th Cir. 1993) ("An

error in jury instructions will mandate reversal of a [civil] judgment only if the error is determined to have

been prejudicial after reviewing the record as a whole.").

### Analysis

### I.    Jury Instruction On Direct Liability

Plaintiff argues that the Court's instruction on direct liability was incorrect because it did not allow

the jury to consider Raber's knowledge of his own harassment.  The Court instructed the jury on direct

liability as follows:

> As to the fifth element of plaintiff's claim for racial harassment under Instruction
> No. 11, plaintiff may show that defendant is responsible for such harassment by
> establishing that each of the following is more probably true than not true:

    (a)    Supervisory or management employees of AutoZone, other than Troy Raber, knew or should have known of the harassment by Troy Raber and/or other employees; and

    (b)    Supervisory or management employees of AutoZone, other than Troy Raber, did not take prompt, appropriate remedial action to end such harassment.

As to element (a), plaintiff may meet his burden by proving that he complained about racial harassment to supervisory or management employees other than Troy Raber. Plaintiff may also meet his burden by proving that the harassment was so open or pervasive that supervisory or management employees other than Troy Raber knew or should have known of the harassment.

In determining whether supervisory or management employees took appropriate action to prevent or correct the alleged harassment, you may consider whether any action was timely, proportional to the seriousness and frequency of the alleged harassment, and reasonably likely to prevent the alleged harassment from recurring.

<u>Jury Instructions</u> (Doc. #147) filed May 20, 2005, Instruction No. 12.

On the other hand, the Court instructed the jury on vicarious liability as follows:

As to the fifth element of plaintiff's claim for racial harassment under Instruction No. 11, plaintiff also may show that defendant is responsible for such harassment by establishing that Troy Raber created a racially hostile work environment for plaintiff. If you find that Troy Raber did so, you must find for plaintiff under this instruction unless defendant proves that each of the following is more probably true than not true:

(a) defendant exercised reasonable care to prevent and promptly correct any racially harassing behavior; and
(b) plaintiff unreasonably failed to take advantage of preventative or corrective opportunities which AutoZone provided.

In evaluating whether defendant exercised reasonable care to prevent and promptly correct any harassment, you may consider the need, presence and adequacy of any anti-harassment policy or complaint procedure. You may also consider whether any remedial action by defendant was timely, proportional to the seriousness and frequency of the alleged harassment, and reasonably likely to prevent the alleged harassment from recurring.

Instruction No. 13.

Plaintiff maintains that Instruction No. 12 was erroneous because the jury could not consider Raber's knowledge of his own harassment. The Court rejects plaintiff's argument. First, plaintiff's theory of direct liability is based on a negligence theory. The pertinent question is whether defendant's supervisory or management employees knew or should have known of the harassment by Raber and others. To impute the knowledge of a harassing supervisor to the corporation in such circumstances would effectively hold the corporation strictly liable for supervisor harassment. In enacting Title VII, Congress did not intend such a result. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 72 (1986) (employers not automatically liable for sexual harassment by supervisors).[2] If the harassing supervisor's knowledge of his own harassment were automatically imputed to the employer under a theory of direct liability, an alternative theory of vicarious liability, as recognized by the Supreme Court in cases of supervisor harassment, would be superfluous. See Faragher, 524 U.S. at 777, 804; Burlington, 524 U.S. at 745, 765. Second, the

---

[2]     See also Harrison v. Eddy Potash, Inc., 158 F.3d 1371, 1374-75 & n.1 (10th Cir. 1998) (Faragher and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998), acknowledged theory of direct liability based on employer's failure to respond after it knew or should have known of supervisor's alleged harassment); Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1014-15 (7th Cir. 1997) (employer not liable for supervisor harassment if it had no reason to know about conduct); Torres v. Pisano, 116 F.3d 625, 637 (2d Cir. 1997) (knowledge imputed to employer where person who gained notice of harassment was supervisor of harasser, i.e. had authority to hire, fire, discipline or transfer harasser); Andrade v. Mayfair Mgmt., Inc., 88 F.3d 258, 262 (4th Cir. 1996) (sexual harassment not automatically imputable to employer; employer not liable in part because employee did not complain about supervisor harassment to supervisor's boss; supervisor's conduct imputed only if employer knew or should have known and failed to take prompt and adequate remedial action); Etefia v. E. Baltimore Cmty. Corp., 2 F. Supp.2d 751, 759 (D. Md. 1998) (under general agency principles, illegal harassment is illegitimate corporate activity, beyond scope of supervisor's employment and cannot be directly imputed to employer) (citing Andrade, 88 F.3d at 261-62); see generally United States v. 141st St. Corp. by Hersh, 911 F.2d 870, 876 (2d Cir. 1990) (knowledge of agent not imputed to principal where agent acts adversely to interests of principal), cert. denied, 498 U.S. 1109 (1991).

Tenth Circuit has noted that a theory of direct liability ordinarily does not apply to supervisor harassment. See Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1270 n.3 (10th Cir. 2000) (vicarious liability applies to situations in which supervisor perpetrates harassment himself, whereas theory of direct liability is more appropriate where employer fails to respond adequately to harassment of which management-level employee knew or should have known); see also Noviello v. City of Boston, 398 F.3d 76, 94 (1st Cir. 2005) (Supreme Court has divided universe of employer liability along line that separates supervisors from non-supervisors; employer vicariously liable when supervisor creates hostile work environment subject to possible affirmative defense under Faragher); Ashmore v. J.P. Thayer Co., Inc., 303 F. Supp.2d 1359, 1370 (M.D. Ga. 2004) (even if supervisor creates hostile work environment, employer can only be liable for harassment of supervisor under some theory of vicarious liability).  Under Deters, a jury instruction on both direct liability and vicarious liability may be erroneous where the harassment is perpetrated solely by a supervisor.  In this case, however, the Court instructed the jury on direct liability because plaintiff presented limited evidence of harassment by co-employees other than Raber.  Such harassment was insufficient to submit a separate hostile work environment claim, by itself. The Court concluded, however, that when combined with Raber's conduct, a reasonable jury could find in plaintiff's favor on this alternative theory.[3]  Because a theory of direct liability applies to co-worker harassment, not supervisor harassment, the Court properly instructed the jury not to impute to the corporation Raber's knowledge of his own harassment.  See supra note 2.  In sum, Instruction No. 12

_____

[3]        The jury ultimately rejected plaintiff's claims based on both theories.

correctly stated the law on direct liability.[4]

Even if the Court erred by instructing the jury not to consider Raber's knowledge of his own harassment, any such error was not prejudicial because the jury could have found in favor of plaintiff on a theory of vicarious liability.  Under a theory of vicarious liability, defendant bore the burden to show the reasonableness of its anti-harassment policy and that plaintiff unreasonably failed to utilize it.  Nearly all of plaintiff's evidence of harassment involved Raber.  Because plaintiff's burden of proof was slightly less under a theory of vicarious liability (on the limited issues of the reasonableness of defendant's policy and plaintiff's use of that policy), it would have been highly unlikely for a jury to find in favor of defendant on a theory of vicarious liability and not reach the same result under a theory of direct liability.  Accordingly, to the extent the Court erred in instructing the jury on plaintiff's theory of direct liability, such an error likely was not prejudicial because the jury rejected plaintiff's racial harassment claim on both theories.  A new trial therefore is not warranted.  See Brown v. Wal-Mart Stores, Inc., 11 F.3d 1559, 1564 (10th Cir. 1993) (error in jury instructions will mandate reversal only if error is determined to have been prejudicial after reviewing record as whole).

## II.   *Faragher* Defense To Vicarious Liability

Plaintiff argues that he is entitled to judgment as a matter of law because defendant did not prove its affirmative defense under Faragher v. City of Boca Raton, 524 U.S. 775 (1998).  The Court previously rejected this argument in plaintiff's motion for summary judgment on a record that was not materially

---

[4]        At the first trial, plaintiff did not object to a nearly identical instruction on direct liability which specifically excluded the knowledge of Raber.  See Jury Instructions (Doc. #66) filed October 27, 2003, No. 14.  Plaintiff asks the Court to reinstate the prior verdict, based on the same allegedly erroneous jury instruction, because the jury granted him some relief at that trial.

different from the evidence at trial.  In so doing, the Court stated:

> Although plaintiff has stated a version of the facts under which he might prevail, a reasonable jury could find otherwise under defendant's version of the facts.  Defendant has submitted the affidavits of four employees who largely contradict plaintiff's version of events.  A jury will have to weigh the relative credibility of the witnesses in order to determine whether defendant permitted a racially hostile work environment.  On a motion for summary judgment, the Court cannot engage in that task.  Viewing the evidence in a light most favorable to defendant, the Court must overrule plaintiff's motion for summary judgment.

Memorandum And Order (Doc. #40) at 16.  Viewing the evidence at trial in a light most favorable to the verdict, defendant presented sufficient evidence for the jury to reasonably conclude that AutoZone exercised reasonable care to prevent and promptly correct any racially harassing behavior and that plaintiff unreasonably failed to take advantage of preventative or corrective opportunities which AutoZone provided.  The Court therefore overrules plaintiff's motion for judgment as a matter of law on the racial harassment claim.[5]

## III.    Weight Of The Evidence

As explained above, judgment as a matter of law is appropriate "only if the evidence, viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party."  Riggs, 927 F.2d at 1149.  In addition, a new trial is not warranted unless the verdict was "clearly, decidedly, or overwhelmingly" against the weight of the evidence.  Anaeme, 164 F.3d at 1284.

Plaintiff maintains that he is entitled to judgment as a matter of law because no reasonable jury

---

[5]    The Court also notes that even if plaintiff was entitled to judgment as a matter of law on the Faragher defense, he would be entitled to only a new trial because the jury also could have found that plaintiff had not satisfied one of the elements of his racial harassment claim.

could have found in favor of AutoZone on the racial harassment claim. The Court disagrees. Again, the Court rejected a similar argument in plaintiff's motion for summary judgment on a record that was not materially different from the evidence at trial. See Memorandum And Order (Doc. #40) at 15-16. Plaintiff has not satisfied the high standards for judgment as a matter of law or a new trial based on the weight of the evidence. Although plaintiff has stated a version of the facts under which he could have prevailed, the jury found otherwise. Based on the evidence at trial, the jury reasonably could have found for either party on plaintiff's racial harassment claim. The Court must therefore defer to its credibility determinations and its ultimate finding that defendant was not liable. Accordingly, plaintiff's motion for judgment as a matter of law based on the weight of evidence is overruled.

## IV.     Racial Composition Of Jury Pool

Plaintiff argues that he is entitled to a new trial because no African-American or Hispanic individuals were in the jury pool. The Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.*, provides in pertinent part: "It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. A party has no right to a "petit jury composed in whole or in part of persons of his own race." Batson v. Kentucky, 476 U.S. 79, 85 (1986) (citing Strauder v. West Virginia, 100 U.S. 303, 305 (1880)). To establish a prima facie violation of the fair cross-section requirement, a party must show:

(1) that the group alleged to be excluded is a "distinctive" group in the community;

(2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

-10-

(3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979).

The system employed by the Federal District of Kansas for selecting petit juries has been the subject of judicial scrutiny, and has been found to satisfy the requirements of 28 U.S.C. § 1861 *et seq.* and even the Sixth Amendment in the criminal context.  See United States v. Chanthadara, 230 F.3d 1237, 1256-57 (10th Cir. 2000), cert. denied, 534 U.S. 992 (2001); United States v. Shinault, 147 F.3d 1266, 1270-73 (10th Cir.), cert. denied, 525 U.S. 988 (1998).  Plaintiff has not shown (1) that the representation of African-American and Hispanic individuals on juries is unfair or unreasonable in relation to the number of African-American and Hispanic individuals in the community or (2) that African-American and Hispanic individuals have been systematically excluded from his venire.  The Court therefore must overrule plaintiff's objection based on the composition of the venire.

**V.**    ***Kolstad* Defense To Punitive Damages**

Plaintiff argues that the Court should reinstate the prior jury verdict because it erroneously granted a new trial.  In particular, plaintiff maintains that because Raber was the corporate designee for processing discrimination complaints, the defense under Kolstad v. Am. Dental Ass'n, 527 U.S. 526 (1999), does not apply.  At trial, the Court instructed the jury as follows: "In determining whether to award punitive damages and in determining the amount of any such damages, you cannot consider any malicious or reckless conduct by Troy Raber which was contrary to any good faith effort by AutoZone to comply with anti-harassment law."  Instruction No. 16.

Initially, the Court overrules plaintiff's objection because it is untimely.  Plaintiff did not file a motion

to reconsider the Court's order of February 11, 2004 which granted defendant a new trial. Instead, plaintiff proceeded to a second trial in the hope of recovering more than a nominal sum for compensatory damages and a higher award of punitive damages. Now, dissatisfied with the results of the second trial, plaintiff seeks to reinstate the prior jury verdict. The Court overrules plaintiff's objection as untimely.

Plaintiff's objection to a new trial also lacks substantive merit. The Tenth Circuit has explained the purpose of the good faith defense under Kolstad:

> [I]n the context of punitive damages, an employer may not be liable for the discriminatory employment decisions of management-level employees where these acts are contrary to good-faith efforts on the part of the employer to comply with Title VII. See Kolstad, 119 S. Ct. at 2129. This principle is meant to advance the purposes of Title VII by encouraging the remediation and prevention that lie at the heart of the statute's goals. Id. It would defeat these purposes to hold an employer strictly liable for the acts of rogue managers when it has made every effort to comply with Title VII's requirements.

Deters, 202 F.3d at 1271. The Tenth Circuit has emphasized, however, that the Kolstad defense applies only in cases of vicarious liability, i.e. where a management-level employee acts contrary to the employer's good faith efforts. See Dodoo v. Seagate Tech., Inc., 235 F.3d 522, 531 (10th Cir. 2000); Deters, 202 F.3d at 1271. The Kolstad good-faith defense does not apply where a plaintiff proceeds on a theory of direct liability, e.g. where the corporate designee to receive employee complaints has final decision-making authority and acts with malice or reckless indifference to the employee's federally protected rights. See id.

In ordering a new trial, the Court stated as follows:

> Under Kolstad, to the extent the jury found defendant vicariously liable based on Raber's conduct, defendant was entitled to an instruction that for purposes of punitive damages, the jury could not consider malicious or reckless conduct by Raber which was inconsistent with defendant's good faith efforts to comply with Title VII. See Kolstad, 527 U.S. at 545-46. In the punitive damages instruction, the Court did not attempt to distinguish

-12-

plaintiff's two alternative theories of liability.

Memorandum And Order (Doc. #96) filed February 11, 2004 at 13-14 (footnote omitted).  Plaintiff argues

that because Raber was a corporate designee to receive employee complaints, Kolstad does not apply.

The Court agrees that the Kolstad defense does not apply to plaintiff's theory of direct liability, but it

squarely applies to plaintiff's theory of vicarious liability.  Defendant maintains that to the extent Raber

created a hostile work environment, he was acting as a rogue manager contrary to its good faith efforts.

Unlike in Deters, plaintiff here proceeds on a theory of vicarious liability based solely on Raber's conduct.

The fact that Raber may have been authorized to receive employee complaints (along with a number of

other managers) does not alter the legal principle that AutoZone is not liable under a theory of vicarious

liability for Raber's conduct which was contrary to its good faith efforts to comply with anti-harassment

law.  Likewise, the fact that the Court also instructed the jury on a direct theory of liability (based on the

combined conduct of Raber and co-workers) does not alter the legal principles which apply to plaintiff's

theory of vicarious liability.  For these reasons, the Court overrules plaintiff's objection to the ruling granting

a new trial.

**IT IS THEREFORE ORDERED** that plaintiff's Motion For Judgment As A Matter Of Law,

Reinstatement Of Prior Jury Verdict Or Alternatively For A New Trial On Damages (Doc. #154) filed

May 31, 2005 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Plaintiff's Amended Motion For Attorney's Fees And Costs

(Doc. #153) filed May 31, 2005, Defendant's Motion And Incorporated Memorandum To Dismiss, Strike

And/Or Quash Plaintiff's Motion For Fees And Costs (Doc. #165) filed June 23, 2005 and Plaintiff's

Amended Motion For Attorney's Fees And Costs (Doc. #171) filed July 12, 2005 be and hereby are

-13-

**OVERRULED as moot**.

Dated this 9th day of August, 2005 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge